SCHOTT, Judge.
This is a claim by the owner of a building for damages resulting from the defective installation of the roof on the building by defendant. From a judgment in plaintiff’s favor for $154,322 defendant has appealed. The issues are whether plaintiff’s formal acceptance of the project precludes recovery based upon defects discovered after acceptance and whether plaintiff is entitled to a new roof as opposed to repairs to the existing roof.
Pursuant to a contract between the parties defendant constructed a large metal building on plaintiff’s property between 1977 and 1979. In March, 1979, pursuant to its architect’s recommendation, plaintiff formally accepted the building. Shortly af-terwards the roof began leaking. Defendant made several attempts to stop the leaking but never succeeded. Finally, plaintiff employed an expert who was of the opinion that the roof could not be repaired satisfactorily and that a new roof had to be installed over the existing roof. Defendant’s witnesses gave conflicting testimony as to the extent and duration of the leaking and the proper method of repairing the damage.
At the conclusion of the trial the judge dictated into the record his reasons for judgment which contain the following findings:
“The first issue is whether or not the roof was defective and negligently installed by the contractor. And the evidence on that issue is massively over-whelming_ Both from the direct evidence and from the photographs every time it rains there are innumerable multiple leaks throughout the entire struc-ture_ And, of course, everyone knows that a roof is supposed to be waterproof and watertight, which roof failed miserably to accomplish that goal.”
The court also made findings as to the precise defects which caused the roof to leak. These included defective flashing along the parapet wall, the failure to allow for thermal expansion, holes around the skylights, and additional roof damage which resulted from attempts by defendant to repair earlier discovered leaks.
In discussing the amount to be awarded the court rejected plaintiff’s argument for removal of the old roof and installation of a new one as well as defendant’s for additional repairs. He found that “the most reasonable and most effective” remedy was the application of a “retro-roof” to the existing roof.
*366 With respect to these factual findings and conclusions the question on appeal is whether this court finds them manifestly erroneous after reviewing all of the evidence in the record. On the question of the existence of the leaks the trial court chose to believe plaintiff’s witnesses. Such a credibility determination will not be disturbed on appeal. On the question of the proper remedy both sides offered expert testimony.
Plaintiff’s principal expert McCaskell, had twenty-six years of experience in the construction and repair of metal buildings. Based upon an inspection of this building in 1983 and a review of the plans and specifications of the building he listed numerous defects including the absence of slotted holes to allow for thermal expansion, the wrong fasteners or screws, missing counter flashing along the valley gutters, no expansion joints in the gutters, improper junction between the downspots and valley gutters, no flashing next to the parapet, holes in the ridge cap, improper installation of screws and mastic around the skylights, excess screws and screws in the wrong places around the panels, and improper installation of the sheeting. He opined that the condition of the roof was such that it could not be repaired and a retro-roof was the only satisfactory solution for the leaks.
Defendant’s expert, Malcolm Carter, rejected the retro-roof solution as too expensive and recommended re-working all of the screws on the roof with some other specific repairs. However, he never physically inspected the building and he stated that he would not make a firm determination without personally inspecting the roof. He also seemed to acknowledge that the failure to allow for thermal expansion would lead to problems in the roof.
The trial judge rejected Carter’s testimony as “speculative” and “because he admitted he had never actually inspected the full extent of the damage.” Furthermore, the trial judge specifically rejected Carter’s “repair approach ... because [Carter] did not have sufficient expertise to justify that.”
Expert testimony is to be weighed by the trial court and where such testimony differs it is largely a matter of fact for the trial court to resolve. State v. Wilco Const. Co., Inc., 393 So.2d 885 (La.App. 4th Cir.1981). From our review of the testimony we find no error in the trial court’s acceptance of McCaskell over Carter. Thus, plaintiff is entitled to the retro-roof solution recommended by McCaskell. We are not persuaded by defendant’s argument that this somehow rewards plaintiff with a new roof after using the old roof for over seven years. The fact is that plaintiff never got the roof it paid for in the first place, and it has suffered with a roof that leaked continuously since it was installed despite repeated attempts by defendant to repair the roof which were not only unsuccessful but which aggravated the problem.
Finally, defendant contends that plaintiff waived its right to recover for defects in the roof when it formally accepted the building. Defendant relies upon State v. Wilco Const. Co. Inc., supra, in support of this proposition. In the cited case the court rejected the State’s claim for hardware which was missing or not working because these deficiencies were readily apparent when the building was accepted.
However, the court stated:
“Despite acceptance, however, an owner may recover for defects not readily discoverable by ordinary inspection or for defects that manifest themselves subsequent to the acceptance ...” 393 So.2d at 897.
We conclude that the acceptance by plaintiff did not constitute a waiver of its warranty against a defective leaking roof.
Accordingly, the judgment is affirmed.

AFFIRMED.

WILLIAMS, J., dissents with reasons.